**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STARSTONE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BKS SOLUTIONS, INC. d/b/a EVENT MEDICAL SOLUTIONS, and CHRISTINA S. ELIAS, Independent Executor of the Estate of Scott D. Elias,<br><br>Defendants. | No. 25 CV 12314<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Scott Elias was attending a concert in Chicago when he fell and suffered injuries to his cervical spine. Ten days later, he died as a result of those injuries. His widow, Christina Elias, brought a wrongful death action against Event Medical Solutions for inadequate medical care Scott received at the time of the injury. EMS had two insurance policies: a $3 million primary policy with National Fire & Marine Insurance Company, and a $5 million excess policy with StarStone Specialty Insurance. Through its insurance broker, EMS promptly reported the action to NFMIC but not StarStone—StarStone was only notified of the action over 20 months later. Since then, StarStone has maintained that it owes no coverage to EMS because the delay in notice breached the policy.

StarStone brought this suit seeking a declaratory judgment that it had no duty to defend or indemnify EMS under the excess policy with respect to the Elias lawsuit.

Despite its coverage position, StarStone attended a mediation for the Elias lawsuit in good faith. Faced with significant exposure in the Elias lawsuit if it was not resolved prior to trial, StarStone agreed to contribute to a settlement subject to its right to seek reimbursement following a judicial determination of no coverage. StarStone filed the now-operative First Amended Complaint seeking declarations that StarStone owes no duty to defend or indemnify EMS, and EMS moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is denied.

## I. Legal Standards

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject-matter jurisdiction and comes in two forms—facial and factual. A facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (emphasis in original) (cleaned up). I accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Id.* A factual challenge, by contrast, contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* (emphasis in original) (cleaned up). When jurisdiction is challenged in fact, I may look beyond the pleadings and view any evidence submitted to determine whether subject-matter jurisdiction exists. *Id.* (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)).

Once jurisdiction has been established, I may turn to the merits of the motion under Federal Rule of Civil Procedure 12(b)(6). *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013). To survive a motion to dismiss for failure to

state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true and drawing all inferences in their favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## II. Facts

Scott Elias was at the Riviera Theater in Chicago for a concert on June 21, 2023, when he fell and injured his cervical spine. [12] ¶¶ 28, 39.[1] Event Medical

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the First Amended Complaint, [12].

This court has subject-matter jurisdiction because StarStone is a Delaware corporation with its principal place of business in Ohio, EMS is an Illinois corporation with its principal place of business in Illinois, Christina Elias is a citizen of Illinois, and the amount in controversy is more than $75,000. [12] ¶¶ 2–4, 7; 28 U.S.C. § 1332(a). Illinois law applies. *See Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (noting that federal courts sitting in diversity apply the choice of law rules of the forum state, and under Illinois choice-of-law rules the forum state's law applies unless an actual conflict is shown or the parties agree that forum law does not apply).

Solutions was providing emergency medical services at the concert, and its employees rendered care to Elias at the scene. [12] ¶¶ 38, 40–41. Elias died ten days later, on July 1, 2023. [12] ¶¶ 29, 42.

StarStone issued an excess healthcare liability policy to EMS sitting above a primary policy issued by National Fire & Marine Insurance Company. [12] ¶¶ 10, 12. Both policies were cancelled effective November 1, 2023. [12] ¶¶ 11, 13. The excess policy was claims-made whenever the primary policy was, and it conditioned StarStone's obligations on written notice as soon as practicable of any claim or suit reasonably expected to involve the policy—and, for any claim involving an unexpected death or sentinel event, notice no later than thirty days after the end of the policy period. [12] ¶¶ 17, 19. On StarStone's reading, that necessitated notice to be effectuated no later than December 1, 2023. [12] ¶ 101.

Christina Elias, as independent executor of her husband's estate, sued the concert promoter and the theater in the Circuit Court of Cook County. [12] ¶¶ 4, 27. The initial complaint did not name EMS, but EMS received a copy and forwarded it to its insurance broker, who said it would file a claim and notify the insurance carrier of the lawsuit. [12] ¶¶ 30–31, 75. Eleven months later, an amended complaint added EMS as a defendant. [12] ¶¶ 33–35. The primary insurer received and acknowledged both pleadings. [12] ¶¶ 32, 36.

EMS's broker first gave StarStone notice of the underlying action on April 16, 2025. [12] ¶¶ 45–46. StarStone acknowledged notice and reserved its rights based on EMS's failure to satisfy the policy's reporting requirements. [12] ¶¶ 47–49. In the

meantime, and without StarStone's knowledge, EMS had offered $1.75 million to settle; the estate rejected that offer (after EMS disclosed the excess policy) and demanded $8 million. [12] ¶¶ 50–51. EMS's defense counsel relayed the demand to StarStone along with an assessment placing a potential verdict between $8 and $10 million. [12] ¶ 52. Over the following two months, StarStone's counsel sought EMS's correspondence with its broker and the primary insurer; EMS produced an email in which it told its broker on July 25, 2023, to notify its carriers, an April 2025 email chain in which defense counsel advised EMS to notify StarStone, and the primary insurer's two acknowledgment letters. [12] ¶¶ 53–59.

StarStone filed this suit on October 8, 2025, and the same day disclaimed coverage on the ground that EMS had not complied with the policy's reporting and notice requirements. [12] ¶¶ 60–62. It reserved all rights but said it would attend the scheduled mediation in good faith. [12] ¶¶ 63–64. At the mediation, StarStone repeated that the policy afforded no coverage; EMS's defense counsel nonetheless asked it to contribute, citing a reasonable probability that a verdict would exceed the excess policy's limits. [12] ¶¶ 65–67. StarStone advised EMS, and EMS acknowledged, that any contribution would be subject to StarStone's right to seek reimbursement if this court found no coverage. [12] ¶ 68. StarStone then contributed to a confidential settlement resolving the underlying action as to EMS. [12] ¶¶ 69, 144.

The First Amended Complaint names EMS and Christina Elias as defendants and pleads five counts. Counts I, II, and III seek declarations that StarStone owes no

duty to defend or indemnify EMS because (Count I) the underlying action was not a claim first made during the policy period; (Count II) in the alternative, EMS did not give notice of a claim involving an unexpected death or sentinel event by December 1, 2023; and (Count III) EMS did not give notice of a claim or suit reasonably expected to involve the policy as soon as practicable. [12] ¶¶ 70–125. Count IV alleges breach of contract, and Count V unjust enrichment; each seeks recovery of StarStone's settlement payment. [12] ¶¶ 126–56.

## III. Analysis

Because the underlying action was settled following the initial filing of this lawsuit, EMS argues that the case is now moot. Not so. There is still a live dispute between the parties: coverage of the costs already paid. *See Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1001 (7th Cir. 1996) (case not moot where parties disputed responsibility for defense costs incurred before suit was dismissed). StarStone "has a probability of gaining a tangible benefit from winning" this case—recovery of the settlement payment it already made. *Contl. Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 516 (7th Cir. 1999). "[N]othing more is necessary to show that the [case] is not moot, that is, that [StarStone] continues to have a sufficient stake in the litigation to give [it] standing to pursue it." *Id.*

As to the merits, EMS argues that, absent a policy provision allowing for recoupment, an insurer may not recoup a settlement payment made subject to a unilateral reservation of rights. EMS, however, does not identify any Illinois cases supporting such a rule, and there is no consistent national rule that would justify an assumption that the laws of other states are equally applicable here. *Contrast Blue*

*Ridge Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 502 (2001) (under California law insurers may seek reimbursement for settlement paid subject to unilateral reservation of rights) *with Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 43 (Tex. 2008) (no reimbursement right under Texas law absent the insured's clear and unequivocal consent). Illinois law does not allow for reimbursement of defense costs, *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 162–63 (2005), but the logic underlying that rule does not extend neatly to indemnification.

Even if such a rule does exist under Illinois law, it would be inappropriate to apply to the pleadings, because the rule could be subject to EMS's consent to StarStone's recoupment. The complaint alleges "EMS acknowledged that any settlement contribution by StarStone would be subject to its right to seek reimbursement following a determination by this Court of no coverage under the StarStone Excess Policy." [12] ¶ 68. Whether that amounted to EMS unequivocally consenting to StarStone's reimbursement right is a factual dispute.

All of EMS's remaining arguments are affirmative defenses. Fed. R. Civ. P. 8(c)(1) (identifying estoppel, statute of frauds, and waiver as affirmative defenses); *McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626 (voluntary payment doctrine is an affirmative defense). "Plaintiffs are not required to anticipate or refute potential affirmative defenses in the complaint." *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025). "In the 'rare' circumstance in which the complaint pleads facts that conclusively establish that" an affirmative defense is applicable, "dismissal

at the pleading stage can be appropriate." *Id.* (citation omitted). None of the asserted affirmative defenses are plainly applicable on the face of the complaint.

The repeated allegations in the complaint that StarStone expressly reserved its rights under the policy undercut any inference that it intentionally relinquished a known right, as necessary for waiver to apply. *Abellan v. Lavelo Prop. Mgt., LLC*, 948 F.3d 820, 829–30 (7th Cir. 2020). The complaint does not suggest that StarStone made any misleading statement, as necessary to support equitable estoppel. *See W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 679 (7th Cir. 2015) (enumerating the elements of equitable estoppel). And StarStone only seeks to enforce its rights under the insurance policy, which is a writing containing all the essential terms and signed by the party against whom enforcement is being sought. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 548–49 (7th Cir. 2005) (citing 740 ILCS 80/1).

As to the voluntary payment doctrine, StarStone could have believed it was compelled to make the settlement payment under its common law duty to settle. *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 922 F.3d 778, 784–84 (7th Cir. 2019). Necessity amounting to compulsion would take the payment outside the scope of the doctrine. *McIntosh*, 2019 IL 123626, ¶ 23. At the pleading stage, it would be inappropriate to ask for anything more of the complaint.

## IV. Conclusion

Event Medical Solutions' motion to dismiss, [14], is denied. The stay on discovery is lifted. Defendants must answer the complaint by October 13, 2026, and the parties shall file a joint status report by October 20, 2026, proposing a case schedule.

ENTER:

Manish S. Shah
United States District Judge

Date: September 21, 2026